**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
———————————————————————  X
                                                                    :
In re                                                               :
                                                                    :  Master Docket No.: 11-cv-05794 (PAC)
ENER1, INC. SECURITIES LITIGATION          :
                                                                    :  ECF Case
This paper applies to:  ALL CASES               :
———————————————————————  X

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION
FOR (I) PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, (II)
CERTIFICATION OF THE SETTLEMENT CLASS FOR PURPOSES OF
SETTLEMENT, AND (III) APPROVAL OF NOTICE TO THE SETTLEMENT CLASS**

**TABLE OF CONTENTS**

I.      INTRODUCTION ......................................................................................... 1

II.     PROCEDURAL BACKGROUND AND SUBSTANTIVE ALLEGATIONS ................. 1

        A.      Procedural Background ............................................................... 1

        B.      Substantive Allegations ............................................................. 3

III.    REASONS FOR THE SETTLEMENT .......................................................... 5

IV.     THE TERMS OF THE SETTLEMENT ......................................................... 6

V.      ARGUMENT ............................................................................................ 7

        A.      The Settlement Should Be Preliminarily Approved ................................. 7

                1.      The Settlement Was Negotiated at Arm's-Length and Is Supported by
                        Plaintiffs and Experienced Counsel ..................................... 8

                2.      The Settlement Terms Are Fair, Reasonable and Adequate Under the
                        *Grinnell* Factors ............................................................... 9

                        a.      Continued Litigation Would Be Complex, Expensive, and
                                Protracted ....................................................... 10

                        b.      Plaintiffs Have Sufficient Information to Make an Informed
                                Decision as to Settlement ..................................... 11

                        c.      Plaintiffs Faced Significant Risks in Establishing Liability and
                                Damages ......................................................... 12

                        d.      Risks of Maintaining Class Action Status Through Trial ............ 13

                        e.      Ability to Withstand Greater Judgment ....................... 14

                        f.      The Settlement Amount Is in the Range of Reasonableness in Light
                                of the Best Possible Recovery and All the Attendant Risks of
                                Litigation ....................................................... 14

        B.      A Class Should Be Certified ............................................................. 15

                1.      Numerosity.................................................................... 16

                2.      Commonality.................................................................. 18

                3.      Typicality ..................................................................... 18

                4.      Adequacy ..................................................................... 19

                5.      Predominance of Common Questions and Superiority to Other Methods of
                        Adjudication.................................................................. 20

        C.      The Form of Notice Should be Approved ......................................... 22

                1.      The Proposed Schedule and Form of Notice .......................... 22

i

          2.     The Proposed Method of Class Notice Is Appropriate ............................ 22

VI.     CONCLUSION.................................................................................................................. 24

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ..................................................... 16, 19, 20

*Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207, 2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) ................................................................................................................................. 11

*Buxbaum* v. *Deutsche Bank AG,* 216 F.R.D. 72 (S.D.N.Y. 2003) .......................................... 23, 24

*Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209 (S.D.N.Y. 1992) ........................ 8, 14

*Cinelli v. MCS Claim Servs., Inc.*, 236 F.R.D. 118 (E.D.N.Y. 2006) ........................................... 12

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ................................... 9, 11, 12, 14

*Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473 (2d Cir. 1995) ...................................... 17

*Corner v. Cisneros*, 37 F.3d 775 (2d Cir. 1994) .......................................................................... 16

*County of Suffolk* v. *Long Island Lighting Co.,* 710 F. Supp. 1422 (E.D.N.Y. 1989), *aff'd*, 907 F.2d 1295 (2d Cir. 1990) ....................................................................................................... 16

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ........................................................ 8, 14

*Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006) ....................................................... 16

*Dietrich v. Bauer,* 192 F.R.D. 119 (S.D.N.Y. 2000) ................................................................... 17

*Dura-Bilt Corp. v. Chase Manhattan Corp.,* 89 F.R.D. 87 (S.D.N.Y. 1981) ............................... 19

*Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147 (1982) ....................................................... 19

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ................................................ 10

*Hicks v. Stanley*, No. 01 Civ. 10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ................... 10

*In re Alloy, Inc. Sec. Litig.*, No. 03 Civ. 1597, 2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004) ...... 12

*In re Am. Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996) ............................................................. 17

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. 1500 MDL, 02 Civ. 5575, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ...................................................................................... 10, 12

*In re Ashanti Goldfields Sec. Litig.,* No. 00 Civ. 717, 2004 WL 626810 (E.D.N.Y. Mar. 30, 2004) ........................................................................................................................................ 17

*In re Baldwin-United Corp. Litig.,* 122 F.R.D. 424 (S.D.N.Y. 1986) .......................................... 19

*In re Drexel Burnham Lambert Group,* 960 F.2d 285 (2d Cir. 1992) ........................................ 20

*In re Frontier Ins. Group, Inc. Sec. Litig.*, 172 F.R.D. 31 (E.D.N.Y. 1997) ............................... 17

*In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004) .......... 11, 12, 13, 23

*In re Globalstar,* No. 01 Civ. 1748, 2004 WL 2754674 (S.D.N.Y. Dec. 1, 2004)...................... 17

*In re Indus. Diamonds Antitrust Litig.,* 167 F.R.D. 374 (S.D.N.Y. 1996).................................. 19

*In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186 (S.D.N.Y. 2005)................................. 7, 18

*In re Ivan F. Boesky Sec. Litig.*, 948 F.2d 1358 (2d Cir. 1991)..................................................... 7

*In re Marsh & McLennan Sec. Litig.*, No. 04 Civ. 8144, 2009 WL 5178546 (S.D.N.Y. Dec. 23,
2009)........................................................................................................ 16, 19, 20, 21, 23, 24

*In re Milken and Assoc. Sec. Litig.*, 150 F.R.D. 46 (S.D.N.Y. 1993) .......................................... 13

*In re NASDAQ Market-Makers Antitrust Litig.,* No. 94 Civ. 3996, 1999 WL 395407 (S.D.N.Y.

June 15, 1999) ...................................................................................................................... 23

*In re Nortel Networks Corp. Sec. Litig.*, No. 01 Civ. 1855, 2003 WL 22077464 (S.D.N.Y. Sept.
8, 2003)................................................................................................................................. 17

*In re NTL, Inc. Sec. Litig.,* No. 02 Civ. 3013, 2006 WL 330113 (S.D.N.Y. Feb. 14, 2006)........ 17

*In re Omnicom Group, Inc. Sec. Litig.*, 597 F.3d 501 (2d Cir. 2010)......................................... 13

*In re Oxford Health Plans, Inc.,* 191 F.R.D. 369 (S.D.N.Y. 2000) ............................................ 19

*In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997) *aff'd*, 117 F.3d 721 (2d
Cir. 1997) ............................................................................................................................. 13

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450 (D.N.J. 1997), *aff'd*, 148
F.3d 283 (3d Cir. 1998)........................................................................................................ 23

*In re Sumitomo Copper Litig.*, 189 F.R.D. 274 (S.D.N.Y. 1999) .................................................. 7

*In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570 (S.D.N.Y. 2008)................................................ 8

*In re Traffic Exec. Ass'n*, 627 F.2d 631 (2d Cir. 1980) ................................................................. 8

*In re Vivendi Universal S.A.,* 242 F.R.D. 76 (S.D.N.Y. 2007) ................................................... 18

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) ............................................................. 18, 19

*Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007) ................................... 23

*Nat'l Rural Telecomms*, 221 F.R.D. 523 (C.D. Cal. 2004) ......................................................... 14

*Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972) ........................................................................... 7

*Saddle Rock Partners Ltd v. Hiatt*, No. 96 Civ. 9474, 2000 WL 1182793 (S.D.N.Y. Aug. 21, 2000) ...................................................................................................................................... 17

*Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277 (S.D.N.Y. 1993) ........................................... 8

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) ............................. 7, 11, 14

*Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982) .................................................................. 16

**Statutes**

11 U.S.C. § 362(a) ..................................................................................................................... 14

15 U.S.C. § 78u-4(a)(7) ..................................................................................................... 2, 22, 24

**Other Authorities**

4 *Newberg on Class Actions*, §§ 11.22, *et. seq.* (4th ed. 2002) ........................................... 7, 8, 16

*Manual for Complex Litigation, Fourth* § 21.632 (2004) ............................................................ 7

**Rules**

Fed. R. Civ. P. 23 ....................................................................................................................... 16

Fed. R. Civ. P. 23(a)(3) .............................................................................................................. 18

Fed. R. Civ. P. 23(b)(3) .............................................................................................................. 21

Fed. R. Civ. P. 23(c) .................................................................................................................. 14

Fed. R. Civ. P. 23(e) .................................................................................................................... 7

Fed. R. Civ. P. Rule 23(c)(2)(B) ................................................................................................ 23

## I.      INTRODUCTION

On January 11, 2013, the parties in the above-styled putative class action (the "Action") entered into a Stipulation and Agreement of Settlement (the "Settlement" or "Stipulation"), which is filed herewith as Exhibit 1, to the accompanying Declaration of William B. Federman ("Federman Decl.").    Lead Plaintiffs Junie L. Morris and Lisa G. Morris ("Plaintiffs") respectfully submit that the proposed $4.2 million cash settlement satisfies all of the relevant legal standards for preliminary approval under Rule 23 of the Federal Rules of Civil Procedure. The Settlement is fair considering the sizeable recovery to the Class and the risks and costs attendant to further, protracted litigation. The Settlement resulted from extensive arm's-length negotiations between the Parties,[1] overseen by respected JAMS mediator, Jed D. Melnick, Esq. ("Jed Melnick" or the "Mediator"). The Settlement reflects a reasoned compromise based on Plaintiffs' and Lead Counsel's knowledge of the strengths and weaknesses of the case gained through intensive pre-complaint investigations, motion practice, consultations with damages experts, and consideration of the arguments Defendants presented during mediation.

## II.     PROCEDURAL BACKGROUND AND SUBSTANTIVE ALLEGATIONS

### A.      Procedural Background

On August 18, 2011, the first of several putative class actions was filed captioned *Beckman v. Ener1, Inc*., *et al.*, Case No. 1:11-CV-05794-PAC (S.D.N.Y.), alleging violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), against Ener1 and certain of its officers and directors. Two additional and related securities class actions were subsequently filed: (1) *Neufeld v. Ener1, Inc*., *et al.,* Case No. 1:11-CV-05795-PAC; and (2) *Foster v. Ener1, Inc*., *et al.*, Case No. 1:11-CV-06030-PAC.

---

[1] All capitalized terms not otherwise defined shall carry the meaning set forth in the Stipulation.

Pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§ 78u-4, *et seq.*, several putative class members moved for consolidation, appointment as lead plaintiffs, and approval of lead counsel. By Order dated February 15, 2012, the Court consolidated the related cases, appointed Junie L. Morris and Lisa G. Morris as Lead Plaintiffs, and appointed the law firm of Federman & Sherwood as Lead Counsel. *See* Dkt. No. 24.

On April 10, 2012, Lead Plaintiffs filed their Consolidated Amended Class Action Complaint the ("Complaint") (Dkt. No. 29) on behalf of a putative class of all persons who acquired Ener1 common stock from November 4, 2010 through August 15, 2011, inclusive (the "Class Period"). The Complaint asserted claims under §§ 10(b) and 20(a) of the Exchange Act against former officers and/or directors of Ener1[2] (collectively, the "Defendants") in connection with, *inter alia*, the Defendants' alleged Class Period material misrepresentations and omissions concerning Ener1's financial position, results of operations and future business prospects.

On June 15, 2012, Defendants filed a motion to dismiss the Complaint. Plaintiffs filed a response in opposition to the motion to dismiss on August 8, 2012. On August 24, 2012, Defendants filed a reply in further support of their motion to dismiss. The Court has not yet ruled on Defendants' motion to dismiss.

---

[2] The Complaint named the following defendants: Defendants Charles Gassenheimer ("Gassenheimer") (Ener1's CEO and Chairman of Think Holdings), Jeffrey Seidel ("Seidel") (Ener1's CFO), Robert Kamischke ("Kamischke") (Ener1's Chief Accounting Officer and VP Finance), Kenneth Baker ("Baker") (Ener1 Director and Think Holdings Director), Elliot Fuhr ("Fuhr") (Ener1 Director and Audit Committee member), Nora Brownell ("Brownell") (Ener1 Director and Audit Committee member), and Thomas Snyder ("Snyder") (Ener1 Director and Audit Committee member).

Plaintiffs did not pursue claims against Ener1 due to the Company filing bankruptcy under Chapter 11 of the Bankruptcy Code. *See* Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, *In re Ener1, Inc.*, No. 12-10299-MG (Bankr. S.D.N.Y.) (Doc. 3); Notice of the Occurrence of the Effective Date of the Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, *In re Ener1, Inc.*, No. 12-10299-MG (Bankr. S.D.N.Y.) (Doc. 82).

During the pendency of Defendants' motion to dismiss, the Parties agreed to participate in a mediation and retained JAMS mediator Jed Melnick to assist them in exploring a negotiated resolution.  After the Parties exchanged confidential information, including mediation statements and a draft amended complaint,[3] the Parties participated in a formal mediation before Jed Melnick on November 20, 2012.   Although the Parties made substantial progress at the mediation, the Action did not settle at that time.  The mediation, however, prompted additional settlement discussions, overseen by Jed Melnick.  These settlement discussions included multiple telephone conferences and email exchanges, during which settlement terms and conditions were proposed and negotiated.  Ultimately, through the assistance of Jed Melnick, the Parties were able to reach an agreement-in-principle on the settlement terms, which culminated in the proposed settlement reflected in the Stipulation.  The Stipulation, together with exhibits and certain other documents referred to herein, has been duly executed by the undersigned signatories on behalf of their respective clients, and reflects the final and binding agreement between the parties. *See* Federman Decl., Ex. 1.

### B.     Substantive Allegations

The factual allegations in this Action have been set forth at length in the Complaint. Plaintiffs pled that during the Class Period, Defendants wrongfully concealed material adverse facts regarding the Company's overall financial condition and well-being resulting from the Company's investments in Think Holdings, AS ("Think Holdings"), a Norwegian limited liability company and the majority owner of Think Global, AS ("Think Global"), an electric vehicle ("EV") manufacturer.

---

[3]   Had the settlement discussions proven unsuccessful, Plaintiffs intended to file a motion for leave to amend in order to file a complaint that included additional information disclosed in the Ener1 bankruptcy proceeding.

Specifically, Plaintiffs alleged that Defendants made false and/or misleading statements in that they failed to disclose that: (1) Think Global's sales were falling far short of expectations and Think Global was accumulating large amounts of unsold inventory; (2) Think Global lacked adequate capital to continue operating; (3) Think Holdings did not have the ability to raise capital to continue operations; (4) the Company's Think Holdings investments were severely impaired at least by December 31, 2010; (5) the Company's loans receivable and accounts receivable from Think Holdings and Think Global were uncollectible at least by December 31, 2010; (6) the Company improperly recognized revenue in connection with battery sales to Think Global during 2010 and first quarter 2011; (7) the Company's goodwill was severely impaired at least by December 31, 2010; (8) the Company's financial statements were not prepared in accordance with generally accepted accounting principles ("GAAP"); (9) the Company lacked adequate internal controls over financial reporting; and (10) as a result of the above, the Company's financial statements were materially false and misleading at all relevant times.

Plaintiffs also allege that, pursuant to SEC Regulation S-K, Item 303(a) (17 CFR §229.303), Defendants were required to, but did not, disclose in the non-financial portions of their Forms S-3, 10-K, and 10-Q filed with the SEC that: (1) Think Global and the EV industry more broadly were experiencing structural challenges that would make EV adoption slower than predicted; (2) Think Holdings did not have the ability to raise capital to continue operations; (3) the ability of Ener1 to collect outstanding loans receivable and accounts receivable from Think Holdings and Think Global was declining; (4) Think Global had excess battery inventory on hand; (5) in January 2011 the Company had stopped shipping batteries to Think Global; and (6) by March/April 2011, Think Global was trying to get rid of its inventory on hand without any intention to sell additional units.

4

## III.    REASONS FOR THE SETTLEMENT

The principal reason for the Settlement is the significant benefit that it provides to the Class now. This benefit must be weighed against the risk that the Class would receive no recovery had Plaintiffs elected to continue litigating and been defeated at the motion to dismiss, class certification, or summary judgment phase, or at trial or on appeal.

Plaintiffs' decision to settle this matter was fully informed and the product of Lead Counsel's rigorous prosecution of this matter. Specifically, in assessing whether the Settlement is in the best interest of the Class, Plaintiffs and Lead Counsel evaluated: (i) the merits of the Parties' claims and defenses in light of Plaintiffs and Lead Counsel's extensive investigations and in light of Defendants' arguments presented in briefs and at mediation; (ii) the likelihood of defeating the pending motion to dismiss, any *Daubert* or summary judgment motions, and prevailing at trial; and the difficulty of calculating and proving loss causation and damages.

Although Plaintiffs believe that the Defendants made materially false and/or misleading statements including the concealment of material adverse facts about the Company's financial position and results and business prospects, Defendants have raised a host of factual and legal challenges increasing the uncertainty of a favorable outcome absent settlement. Securities fraud litigation like this action is notoriously complex and difficult to prove, and rarely is there concrete direct evidence of fraudulent intent.  Indeed, Plaintiffs faced the possibility that the Court could: (i) grant Defendants' motion to dismiss, in whole or in part; (ii) not grant (or severely curtail) Plaintiffs' motion for class certification; or (iii) reject Plaintiffs' damages analysis, in whole or in part, under *Daubert*.  By settling the action now, Plaintiffs and the Class can share in a significant all-cash compensation and avoid the risk that continued litigation may result in a smaller recovery or possibly no recovery at all.

5

Similarly, although Defendants deny each and all of Plaintiffs' claims and contentions, they nevertheless have concluded that it is desirable to fully and finally resolve this litigation in the manner and on the terms set forth in the Stipulation. For Defendants, resolution of the Action limits further expense and inconvenience and eliminates the uncertainty and risks inherent in any litigation.

Accordingly, Plaintiffs and Lead Counsel submit that the Settlement is sufficiently within the range of possible approval to warrant granting this motion for preliminary approval of the Settlement. Defendants do not oppose this motion for preliminary approval of the Settlement.

## IV.   THE TERMS OF THE SETTLEMENT

The Settlement resolves all claims of the Plaintiffs and the Class against all Released Parties. *See* Federman Decl., Ex. 1. The Defendants have agreed to cause $4,200,000 to be paid into a Settlement Fund on behalf of Plaintiffs and the Class. The Settlement Fund will be deposited into an escrow account within thirty (30) calendar days after the entry of the Preliminary Approval Order in accordance with the payment instructions to be provided by Lead Counsel and will then earn interest until distributed to the Class.

The Stipulation also provides for the form and manner of class notice, the proof of claim procedures, the procedures by which potential Class members may seek exclusion or object to any terms of the Settlement, and the procedure by which Lead Counsel will apply for attorneys' fees and reimbursement of expenses incurred in prosecuting this Action as well as an incentive award for Lead Plaintiffs.

## V.     ARGUMENT

### A.     The Settlement Should Be Preliminarily Approved

The law expresses a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal citation and quotations omitted).

A court's review of a proposed class action settlement generally involves a two-step process: preliminary approval and a subsequent fairness hearing.  *See In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 191 (S.D.N.Y. 2005) (citing *Manual for Complex Litigation, Fourth* § 21.632 (2004)); *see also* Fed. R. Civ. P. 23(e); 4 *Newberg on Class Actions*, §§ 11.22, *et. seq.* (4th ed. 2002).  At the preliminary approval stage, a court will review the proposed settlement and make an initial determination as to its fairness, reasonableness, and adequacy.  "Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted."  *Initial Pub. Offering,* 226 F.R.D. at 191.  These procedures safeguard class members' procedural due process rights and enable the court to fulfill its role as the guardian of class interests.

Whether a proposed settlement is fair is a determination left to the trial court's sound discretion.  *See In re Ivan F. Boesky Sec. Litig.*, 948 F.2d 1358, 1368 (2d Cir. 1991); *Newman v. Stein*, 464 F.2d 689, 692 (2d Cir. 1972).  When exercising its discretion, a court should review the proposed settlement in light of the strong judicial and public policies that favor settlements. *See In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 280 (S.D.N.Y. 1999). There is a strong initial presumption that a proposed settlement negotiated during the course of litigation is fair and reasonable.  *See Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 212 (S.D.N.Y.

1992) (citation omitted). Indeed, "absent evidence of fraud or overreaching, [courts] consistently have refused to act as Monday morning quarterbacks in evaluating the judgment of counsel." *Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 281 (S.D.N.Y. 1993).

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. *Newberg* § 11.25. To grant preliminary approval, a court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980). "Courts determine the fairness of a settlement by looking both at the terms of the settlement and the negotiation process leading up to it." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008). As detailed below, both the negotiation process and the terms of the Settlement support a finding of fairness. As such, preliminary approval is warranted.

## 1. The Settlement Was Negotiated at Arm's-Length and Is Supported by Plaintiffs and Experienced Counsel

The Settlement was negotiated at arm's-length by Plaintiffs and Lead Counsel who are experienced in complex securities litigation and who were acting in an informed manner. During the mediation process, the Parties submitted confidential mediation statements and participated in a full day mediation session. After the conclusion of the mediation, the Parties continued settlement discussions, including multiple telephone conferences and email exchanges overseen by JAMS mediator Jed Melnick. Ultimately, the Parties, through the assistance of Jed Melnick, agreed to settle all claims for a payment of $4.2 million in cash. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("mediator's involvement . . . ensure[d] that the proceedings were free of collusion and undue pressure").

Lead Counsel and Plaintiffs consider the proposed settlement to be an excellent outcome for the Class in light of the Action's strengths and weaknesses.  Although formal discovery was not commenced, Lead Counsel conducted an extensive pre-filing investigation and continued these investigative efforts up until the time that the Settlement was reached. Specifically, this investigation included: (i) identifying and interviewing numerous former employees of Ener1 and Think Global; (ii) collecting, reviewing, and analyzing SEC filings, press releases, news articles, and analyst reports concerning Ener1; (iii) reviewing numerous filings in the Ener1 bankruptcy proceeding,[4] the findings from which caused Lead Counsel to prepare an amended complaint that Plaintiffs provided to Defendants and the mediator; (iv) consulting with an experienced damages and stock market efficiency consultant; and (v) thoroughly researching the applicable law with respect to the claims and potential defenses thereto.  These circumstances give rise to a presumption of fairness.

> **2.     The Settlement Terms Are Fair, Reasonable and Adequate Under the *Grinnell* Factors**

In determining whether the substantive terms of a settlement are fair, reasonable, and adequate, courts in this Circuit look to the Grinnell factors.   These factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on*

---

[4] *In re Ener1, Inc.*, No. 12-10299-MG (S.D.N.Y. Bkpty).

*other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).  Because the second *Grinnell* factor -- the reaction of the class to the settlement -- is only applicable at the "fairness hearing" stage, it is not addressed below.   An evaluation of these factors weighs in favor of preliminary approval of the proposed settlement.

> ### a.   Continued Litigation Would Be Complex, Expensive, and Protracted

Courts have consistently recognized that the complexity, expense, and likely duration of litigation are critical factors in evaluating the reasonableness of a settlement, especially in a securities class action. *See, e.g., In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. 1500 MDL, 02 Civ. 5575, 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006); *Hicks v. Stanley*, No. 01 Civ. 10071, 2005 WL 2757792, at *5-6 (S.D.N.Y. Oct. 24, 2005).

Reaching a settlement at this juncture avoids the uncertainty of the motion to dismiss, class certification, and summary judgment phases of the litigation, and (assuming Plaintiffs' success at these stages) a complex and costly trial, and likely appeal.  Throughout this process, Plaintiffs would face numerous hurdles such as arguments that there were no actionable misrepresentations during the Class Period, that Defendants did not act with scienter compelling challenges to loss causation, and arguments that there were no recoverable damages.

Moreover, even if Plaintiffs were to prevail at all stages of the litigation, any potential recovery (in the absence of a settlement) would occur years in the future, substantially delaying payment to the Class. By contrast, the Settlement offers the opportunity to provide definite recompense to the Class now. *See Hicks*, 2005 WL 2757792, at *6 ("Further litigation would necessarily involve further costs; justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action.").

**b.** **Plaintiffs Have Sufficient Information to Make an Informed Decision as to Settlement**

The third *Grinnell* factor, which looks to the "stage of the proceedings and the amount of discovery completed," *Wal-Mart*, 396 F.3d at 117, focuses on whether the plaintiffs "obtained sufficient information through discovery to properly evaluate their case and to assess the adequacy of any settlement proposal." *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207, 2010 WL 3119374, at *3 (S.D.N.Y. Aug. 6, 2010).

As noted above, although Plaintiffs have not had the opportunity to engage in formal discovery proceedings, Lead Counsel conducted an extensive pre-complaint investigation, and the information learned during that process is reflected in many of the allegations set forth in the 151 page Complaint.  Plaintiffs contend that many of the allegations concerning Defendants' misrepresentations are supported by several confidential informants' accounts, independent media reports, and internal Ener1 documents (obtained from post-complaint filings in the Ener1 bankruptcy proceeding) regarding Think Global's excess inventory levels and solvency issues. Moreover, the briefing of the motions to dismiss and information exchanged through the mediation process have given Lead Counsel the opportunity to assess the strengths and weaknesses of Defendants' defenses.  Therefore, Lead Counsel was extremely knowledgeable of the relevant issues and able to recommend the Settlement to Plaintiffs and to the proposed class. *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004) ("Formal discovery is not a prerequisite [to settlement]; the question is whether the parties had adequate information about their claims").

Lead Counsel's knowledge of the merits and potential weaknesses of Plaintiffs' claims are adequate to support the Settlement.  Accordingly, this factor also supports approval of the Settlement.

11

c.       **Plaintiffs Faced Significant Risks in Establishing Liability and Damages**

In analyzing the risks concerning liability, the Court does not "need to decide the merits of the case or resolve unsettled legal questions." *Cinelli v. MCS Claim Servs., Inc.*, 236 F.R.D. 118, 121 (E.D.N.Y. 2006) (internal quotations and alterations omitted).  Rather, the Court weighs the likelihood of success on the merits against the relief provided by the Settlement. *See id*. Courts routinely approve settlements where plaintiffs would have faced significant legal and factual obstacles to establishing liability.  *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004).

In assessing the Settlement, the Court should balance the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation. *See Grinnell*, 495 F.2d at 463.  Securities class actions present hurdles to proving liability that are difficult for plaintiffs to meet.  *See AOL Time Warner*, 2006 WL 903236, at *11 (noting that "[t]he difficulty of establishing liability is a common risk of securities litigation"); *see, e.g., In re Alloy, Inc. Sec. Litig.*, No. 03 Civ. 1597, 2004 WL 2750089, at *2 (S.D.N.Y. Dec. 2, 2004) (finding that issues raised in a securities action presented significant hurdles to proving liability).

While Lead Counsel believes that they would prove Plaintiffs' claims, they also recognize that they would face substantial hurdles.  First, Plaintiffs' claims would need to survive the pending motion to dismiss.  Even if Plaintiffs' claims survive, Plaintiffs would then have to obtain evidence during discovery to establish their claims and counter the credible defenses that could be accepted by the Court or jury.  Although Plaintiffs believe that there exists documentary and testimonial evidence to support their claims, there is no way to determine without substantial additional litigation whether such evidence in fact exists, is sufficient to

withstand a summary judgment motion, and would convince a jury to accept Plaintiffs' theory of the case over Defendants' competing theory.

Plaintiffs would also face the risk that they would be unable to prove loss causation and damages. *See In re Milken and Assoc. Sec. Litig.*, 150 F.R.D. 46, 54 (S.D.N.Y. 1993) (approving settlement of a small percentage of the total damages sought because the magnitude of damages often becomes a "battle of experts . . . with no guarantee of the outcome"); *see also In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997) *aff'd*, 117 F.3d 721 (2d Cir. 1997). To prevail on those issues, Plaintiffs would be required to prove with the assistance of an expert that Defendants' misleading statements inflated Ener1's stock price, as well as the amount of the artificial inflation.

Defendants would counter with their own expert(s) and would challenge the scientific validity of Plaintiffs' expert's report. *See, e.g., In re Omnicom Group, Inc. Sec. Litig.*, 597 F.3d 501 (2d Cir. 2010). At the summary judgment and/or *Daubert* motion stages, Defendants would likely also challenge Plaintiffs' calculation of damages or argue that any decline in Ener1's stock price resulted from market, industry, or other non-case-related factors

Accordingly, the proposed Class faces a very real risk of no recovery, possibly after years of additional proceedings absent settlement. Conversely, the Settlement will provide tangible, certain, and substantial relief to the proposed Class now, "without subjecting them to the risks, complexity, duration, and expense of continuing litigation." *In re Global Crossing*, 225 F.R.D. at 456-57.

### d.   Risks of Maintaining Class Action Status Through Trial

Lead Counsel believes that it would have obtained class action status and maintained that status through trial. Nonetheless, Defendants can continuously raise challenges to class certification, and may move to de-certify the Class before trial or on appeal at the conclusion of

trial. *See* Fed. R. Civ. P. 23(c); *Chatelain*, 805 F. Supp. at 214 ("Even if certified, the class would face the risk of decertification. This factor indicates that settlement is advantageous to the class at this time.").

> e.    **Ability to Withstand Greater Judgment**

As previously mentioned, Plaintiffs were unable to name Ener1 as a defendant in the Complaint based on the Company's filing for bankruptcy. *See* 11 U.S.C. § 362(a).  While there is no basis to believe that the remaining individual defendants are incapable of withstanding a greater judgment, that factor alone is insufficient to defeat approval of the Settlement. *See D'Amato*, 236 F.3d at 86 (the ability to withstand higher judgment, "standing alone, does not suggest that the settlement is unfair").  Where, as here, the other *Grinnell* factors weigh in favor of approving the Settlement, the possibility for a greater judgment should not deter the Court from preliminarily approving the Settlement.  *See Nat'l Rural Telecomms*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("It has been held proper to take the bird in the hand instead of a prospective flock in the bush.").

> f.    **The Settlement Amount Is in the Range of Reasonableness in Light of the Best Possible Recovery and All the Attendant Risks of Litigation**

The size of the Settlement provides support for its reasonableness when viewed in light of the best possible recovery and all of the risks of litigation. *See Wal-Mart*, 396 F.3d at 119 ("there is a range of reasonableness with respect to a settlement — a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion") (internal citation omitted).

Applying the allocations of the Settlement Amount developed for the Plan of Allocation, Class Members would receive $0.09 per share before Court-approved fees and expenses and costs of notice and claims administration. This figure also assumes that every eligible Class

14

Member asserts a valid claim; however, the actual claim rate is likely to be much less than 100%, making the proportional recovery per claimant much higher.

When compared to other securities class action settlements, the Settlement is within the range of reasonableness especially since the claims have not yet survived Defendants' motion to dismiss.  Indeed, the $4.2 million settlement represents over 17% of the highest-possible estimated damages and 40% of the lowest-possible estimated damages, as determined by Defendants' financial expert.[5]  A 2012 report by Cornerstone Research entitled "Securities Class Action Settlements: 2011 Review and Analysis" ("Cornerstone Report") determined, based on an analysis of cases settled from 1996 through 2011, that for securities class actions involving a restatement, the median settlement was 3.8% of the total estimated damages.  *See* Federman Decl. Ex. 2 at 9.  The Cornerstone Report further found that in 2011 the median securities class action settlement was 10.8% of estimated damages in cases with estimated damages less than $50 million.  *See id.* at 7.  The Settlement is therefore favorable in comparison to other securities class action settlements and represents a significant recovery in light of the risks that Lead Plaintiffs will not survive dismissal, certify the proposed class, overcome any motions for summary judgment, and obtain a greater recovery, if any, at trial.

**B.      A Class Should Be Certified**

In granting preliminary settlement approval, the Court should also certify the Class for purposes of the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

---

[5]      Defendants' expert estimated the total Class-wide damages to be between $10.5 and $24.5 million.

It is well-settled that a court may certify a class for settlement purposes,[6] provided that the court conducts an inquiry under Rules 23(a) and (b). *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006). While a class generally must meet all of the requirements of Rule 23, "[s]ettlement is relevant to a class certification" and is "a factor in the calculus." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619, 622 (1997).[7] The Court should: make a determination that the proposed Class satisfies Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation, and at least one of the subsections of Rule 23(b); and provisionally certify the Class, and appoint Lead Counsel as Lead Class Counsel and Plaintiffs as class representatives.

As discussed below, all of the certification requirements for settlement purposes are met for this proposed Class, and Defendants consent to provisional certification (for settlement purposes only). *See* Federman Decl., Ex. 1 (Stipulation of Settlement) at ¶¶25.[8]

### 1. Numerosity

The numerosity requirement is satisfied when a plaintiff can demonstrate that "the class is so numerous that joinder of all members is impracticable." *Corner v. Cisneros*, 37 F.3d 775, 796 (2d Cir. 1994) (quoting Fed. R. Civ. P. 23). In satisfying the numerosity requirement, "a plaintiff need not show that joinder is impossible. Nor need the plaintiff know the exact number

---

[6]   *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *In re Marsh & McLennan Sec. Litig.*, No. 04 Civ. 8144, 2009 WL 5178546, at *8 (S.D.N.Y. Dec. 23, 2009).

[7]   In determining whether to certify a class for purposes of settlement, the manageability concerns of Rule 23(b)(3) are not at issue. *See Amchem,* 521 U.S. at 593.

[8]   *See Newberg,* § 11.27 at 11-40 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only."); *County of Suffolk* v. *Long Island Lighting Co.,* 710 F. Supp. 1422, 1424 (E.D.N.Y. 1989) ("It is appropriate for the parties to a class action suit to negotiate a proposed settlement of the action prior to certification of the class."), *aff'd*, 907 F.2d 1295 (2d Cir. 1990).

of class members." *Saddle Rock Partners Ltd v. Hiatt*, No. 96 Civ. 9474, 2000 WL 1182793, at *2 (S.D.N.Y. Aug. 21, 2000) (citations omitted). Rather, while "[t]here is no strict numerical test for determining impracticability of joinder[,] . . . [w]hen class size reaches substantial proportions . . . the impracticability requirement is usually satisfied by the numbers alone." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). Judicial consensus is that a class with as few as 40 members satisfies the requirement.[9] Moreover, "[i]n securities fraud actions brought against publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re Nortel Networks Corp. Sec. Litig.*, No. 01 Civ. 1855, 2003 WL 22077464, at *2 (S.D.N.Y. Sept. 8, 2003) (quoting *In re Frontier Ins. Group, Inc. Sec. Litig.*, 172 F.R.D. 31, 40 (E.D.N.Y. 1997)).[10]

Plaintiffs believe that the Class consists of many thousands of members. Throughout the Class Period, investors actively traded Ener1 common stock on the NASDAQ Stock Market, with approximately 169 million shares issued and outstanding,[11] and average daily trading volume of approximately 1.58 million shares. *See* Federman Decl., Ex. 3. Thus, numerosity is readily established.

---

[9]   *See, e.g., Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473,483 (2d Cir. 1995); *In re NTL, Inc. Sec. Litig.,* No. 02 Civ. 3013, 2006 WL 330113, at *5 (S.D.N.Y. Feb. 14, 2006).

[10]   *See In re Globalstar,* No. 01 Civ. 1748, 2004 WL 2754674, at *3 (S.D.N.Y. Dec. 1, 2004) ("based upon the number of shares outstanding ... it is reasonable to assume that the number of class members is in the hundreds, if not thousands. Plaintiffs need not set forth an exact class size as a precondition to show numerosity"); *Dietrich v. Bauer,* 192 F.R.D. 119, 123 (S.D.N.Y. 2000); *In re Ashanti Goldfields Sec. Litig.,* No. 00 Civ. 717, 2004 WL 626810, at *11-12 (E.D.N.Y. Mar. 30, 2004).

[11]   *See* Ener1's Form 10-Q for the first quarter of 2011, filed with the Securities and Exchange Commission on May 20, 2011.

### 2.      Commonality

Rule 23(a)(2) requires that, in order for an action to be properly maintained as a class action, there must be questions of law or fact common to the class.  The Second Circuit has held that the commonality requirement is satisfied if the named plaintiffs share at least one question of fact or law in common with the purported class. *See Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). Federal securities cases like this one easily meet the commonality requirement, which is satisfied where "putative class members have been injured by similar material misrepresentations and omissions." *Initial Pub. Offering*, 243 F.R.D. at 85.

There are numerous questions of law or fact common to Plaintiffs and the Class including: (a) whether the federal securities laws were violated by Defendants' acts as alleged herein; (b) whether statements disseminated by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about Ener1's business and operations; (c) whether Defendants acted willfully or recklessly in omitting and/or misrepresenting material facts; (d) whether Defendants' non-disclosures and/or misrepresentations constituted a fraud on the market by artificially inflating the market prices of Ener1 common stock during the Class Period; and (e) whether the members of the Class have sustained damages and, if so, what is the proper measure of such damages. These issues are prototypical examples of those which have been found to present "common questions" of law or fact meriting class certification.

### 3.      Typicality

Rule 23(a)(3) requires that "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This requirement is readily met where "the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed class members." *In re Vivendi Universal S.A.,* 242 F.R.D. 76, 85 (S.D.N.Y. 2007) (citation omitted); *see In re Oxford Health Plans, Inc.,* 191 F.R.D. 369,

375 (S.D.N.Y. 2000); *In re Baldwin-United Corp. Litig.,* 122 F.R.D. 424, 428 (S.D.N.Y. 1986). In this regard, the requirements of commonality and typicality tend to merge. *See Marisol A.,* 126 F.3d at 376.  In essence, "[t]he crux of both requirements is to ensure that 'maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Id.* (quoting *Gen. Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 157 n.13 (1982)). There is no requirement, however, that the claims of all members of a purported class be identical.  *In re Marsh,* 2009 WL 5178546, at *10; *In re Indus. Diamonds Antitrust Litig.,* 167 F.R.D. 374, 379 (S.D.N.Y. 1996); *Dura-Bilt Corp. v. Chase Manhattan Corp.,* 89 F.R.D. 87, 99 (S.D.N.Y. 1981) (internal citations omitted).

The allegations in this case include a common course of unlawful conduct by the Defendants.  Plaintiffs, similar to all who comprise the putative Class, acquired Ener1 shares at prices that were artificially inflated by Defendants' alleged material misrepresentations and/or omissions regarding Ener1's financial position and results and future business prospects. Plaintiffs and their fellow Class members were all damaged when the value of Ener1 stock declined materially after August 15, 2011, allegedly owing to the Company's announcement that a large restatement of its previously filed financial statements was required to correct numerous accounting irregularities.  Accordingly, Plaintiffs' and the Class' interests are directly aligned and Plaintiffs' claims are typical of the proposed Class.

### 4.    Adequacy

Federal Rule of Civil Procedure Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interest of the class."  The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625 (*citing Falcon*, 457 U.S. 147, 157-58, n.13).  The requirement is met if

19

it appears that: (1) the named plaintiffs' interests are not antagonistic to the class' interests; and (2) the named plaintiffs' attorneys are qualified, experienced, and generally able to conduct the litigation. *See In re Drexel Burnham Lambert Group,* 960 F.2d 285, 291 (2d Cir. 1992); *In re Marsh,* 2009 WL 5178546, at *10.

Plaintiffs' interests are not antagonistic to the interests of the Class.  *See* Plaintiffs' Certifications of Investment (Dkt. No. 12-1).  As previously explained, Plaintiffs incurred losses from their purchase of Ener1 stock, which were caused by the same alleged wrongdoing that similarly injured every other member of the Proposed Class.  Moreover, Plaintiffs have participated throughout this proceeding, including their review and approval of the Complaint and their involvement in the mediation process.

Lead Counsel is eminently qualified, experienced and able to conduct this litigation. Federman & Sherwood specializes in class action and complex securities litigation and has litigated such cases in courts throughout the country, as documented in its firm résumé.  *See* Federman Decl., Ex. 4.  Moreover, as discussed above, because Plaintiffs and the Class were injured by the same alleged misconduct, their interests and claims are coextensive.

### 5.  Predominance of Common Questions and Superiority to Other Methods of Adjudication

To certify a class under Rule 23(b)(3), a court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  *In re Marsh*, 2009 WL 5178546, at *11.  The Supreme Court has defined this inquiry as establishing "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 623. This inquiry is "similar" to Rule 23(a)(3)'s typicality requirement.  *Id*. at 623 n.18.  The Court added that "[p]redominance is

20

a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Id.* at 625.

Here, the predominance requirement is readily satisfied.  The essence of the Complaint is that Defendants disseminated materially false and/or misleading statements by permitting Ener1: to continue recognizing revenues from Think that were uncollectible; to delay taking impairment charges for its accounts receivables and loans receivable that were uncollectible; and to overstate the value of its investment in Think Holdings and its goodwill that were completely worthless.  Under these circumstances, Plaintiffs' § 10(b) claim is susceptible of proof applicable to all Class Members.  Plaintiffs can prove each element of their claim through common evidence of Defendants' public statements, Ener1's internal business practices and procedures, and the impact of the corrective disclosure on the price of Ener1 stock, which traded in an efficient market.

Rule 23(b)(3) also sets forth the following non-exhaustive factors to be considered in making a determination of whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability . . . of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).  Courts have recognized that the "class action is uniquely suited to resolving securities claims," because "the prohibitive cost of instituting individual actions" in such cases gives class members "limited interest in individually controlling the prosecution or defense of separate actions." *In re Marsh*, 2009 WL 5178546, at *12.

The scope and complexity of Plaintiffs' claims against Defendants, and Ener1's bankruptcy, together with the high cost of individualized litigation, make it unlikely that the vast majority of the Class Members would be able to obtain relief without class certification. Moreover, it is clearly desirable to concentrate the claims of all Class Members in this forum, and Plaintiffs do not foresee any difficulties in the management of this Action as a class action. Accordingly, the requirements of Rule 23(b)(3) are satisfied.

### C.     The Form of Notice Should be Approved

#### 1.     The Proposed Schedule and Form of Notice

If the Court preliminarily approves the Settlement, Plaintiffs propose two forms of notice, a long form notice ("Notice") and a summary notice ("Summary Notice") (collectively the "Notices").  The Notice will be sent by mail to all identifiable Class Members at their last known address, and the Summary Notice will be published once in *Investors' Business Daily* and issued twice electronically over *PR Newswire*, an internet wire service, for those Class Members whose addresses cannot be identified.  Substantively, the Notices: describe the Action and define the Class; describe the claims, defenses, and issues on which the parties disagree; notify Class Members of their rights to appear, object, and opt out; clearly explain the binding nature of the Settlement; and set forth the plan of allocation pursuant to which the Net Settlement Fund will be allocated among Class Members.  *See generally* Exs. A-1 and A-3 to the Stipulation.  Consistent with the PSLRA, the Notices also provide the relevant statements of recovery, potential outcomes of the case, Plaintiffs' incentive fee sought, attorneys' fees and expenses sought, attorney information, and the reasons for the Settlement. *See* 15 U.S.C. § 78u-4(a)(7).

#### 2.     The Proposed Method of Class Notice Is Appropriate

Rule 23(e)(1) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Accordingly, the Second Circuit has held

that the adequacy of a class action settlement notice is "measured by reasonableness." *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 438 (2d Cir. 2007).[12]

"For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. Rule 23(c)(2)(B).  Where "the parties seek simultaneously to certify a Class and to settle a class action, the elements of Rule 23(c) notice (for class certification) are combined with the elements of Rule 23(e) notice (for settlement or dismissal)." *In re Global Crossing*, 225 F.R.D. at 448. Rule 23(c)(2) requires the "best practicable notice," while Rule 23(e) requires notice that is "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 527 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998). Neither Rule 23 nor due process requires actual notice to each possible class member.[13]

A combined notice under Rule 23(c)(2) and Rule 23(e) must include the following information: (1) notification that the Court will exclude a class member if he/she so requests by a certain date; (2) notification that the judgment will include all members of the class who do not request exclusion; (3) notification that any class member who does not request exclusion may enter an appearance through counsel; (4) the nature of the pending litigation; (5) the settlement's

---

[12]   "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings. Notice is adequate if it may be understood by the average class member." *Id.* (internal citations omitted).

[13]   *See In re Marsh,* 2009 WL 5178546, at *23-24; *Buxbaum* v. *Deutsche Bank AG,* 216 F.R.D. 72, 80-81 (S.D.N.Y. 2003); *In re NASDAQ Market-Makers Antitrust Litig.,* No. 94 Civ. 3996, 1999 WL 395407, at *2 n.3 (S.D.N.Y. June 15, 1999).

general terms; (6) notification that complete information is available from the court files; and (7) notification that any class member may appear and be heard at the Fairness Hearing.   The PSLRA imposes additional requirements for notice in securities fraud actions.[14]

Here, the proposed Notice and Summary Notice, *see* Stipulation Exs. A-1 & A-3, satisfy Rule 23, and the PSLRA's statutory requirements.   Moreover, due process is satisfied because the notice program includes both individual notice and general publication. *See, e.g., In re Marsh*, 2009 WL 5178546, at *23-24; *Buxbaum*, 216 F.R.D. at 81.   Because the Notices give absent Class Members reasonable notices of their rights, the Court should approve them.

## VI.   CONCLUSION

For the reasons set forth in this memorandum, Plaintiffs respectfully submit that the Court should enter an order: (1) granting preliminary approval of the proposed Settlement; (2) conditionally certifying the Class for settlement purposes; (3) appointing Lead Counsel as Lead Class Counsel; (4) approving the Parties' proposed form and method of giving notice of the pendency of this Action and the Settlement to the Class; (5) directing that notice be given to the Class Members; and (6) scheduling a hearing at which the Court considers (a) the parties' request for final approval of the Class, the Settlement, the Plan of Allocation, and entry of the Judgment and (b) Lead Counsel's application for an award of attorneys' fees and reimbursement of expenses and Incentive Award for Plaintiffs.

---

[14]   These additional requirements are: (a) the amount of the settlement proposed to be distributed to the parties as determined in the aggregate and on an average per-share basis; (b) if the parties do not agree on the average amount of damages per share that would be recoverable in the event plaintiffs prevailed, as is the case here, a statement from each settling party concerning the issue(s) on which the parties disagree; (c) a statement indicating which parties or counsel intend to make an application for attorneys' fees and costs, the amount that will be sought, and a brief explanation in support of the request; (d) the name, telephone number, and address of one or more representatives of counsel for the class who will be reasonably available to answer questions concerning any matter contained in the notice; (e) a brief statement explaining why the parties are proposing the settlement; and (f) such other information as may be required by the Court.  15 U.S.C. § 78u-4(a)(7).

Dated: January 14, 2013                    Respectfully submitted,


                                           s/William B. Federman
                                           William B. Federman (WF9124)
                                           FEDERMAN & SHERWOOD
                                           10205 North Pennsylvania Avenue
                                           Oklahoma City, Oklahoma 73120
                                           Telephone: (405) 235-1560
                                           Facsimile:  (405) 239-2112
                                           wbf@federmanlaw.com
                                                   -and-
                                           2926 Maple Ave., Suite 200
                                           Dallas, TX  75201

                                           *Lead Counsel for Plaintiffs*



## CERTIFICATE OF SERVICE

        This is to certify that on January 14, 2013, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

                                           s/William B. Federman